The court of appeals afterwards made the following decree :
Tins is an appeal from the decree of a Circuit judge in Equity, made upon a bill of review, which was filed On the 26th October, in the year of our Lord 1813, by which decree the judge decided, that “ the petitioners not shewing any error of law apparent upon the decree, (complained of) nor pretending to have discovered any' •new testimony which would materially alter or change the decree, the application for a re-hearing should be rejected.”
It is necessary to state the circumstances of this case, in order to a right understanding of the decree now appealed from.
Col. Thomas Lide, of Cheraw' district, made and executed his last will and testament, on the 7th day of November, 1787, wherein he, amongst other things, bequeathed to his wife, Sirs. Mehitabel Lide, a legacy of SOL per annum, during her natural life, to be made and raised out of the crops or profits of his plantation, and paid to her by his executors, annually, in lieu of her part or portion of his estate. He also added that as his wife had been entitled to a part of the estate of Charles Irby, deceased, and which by special contract with her, he the testator was not to have any part of j he therefore bequeathed to her all and every part of the said Irby’s estate, which he might be entitled to in consequence of his said marriage with her. The testator further disposed of the rest of Ins estate among his children by a former marriage. The testator died on the day of the date of his will, which was soon after proved in common form before the ordinary, without opposition; and the annuity bequeathed to his wise was paid to her for nearly *427 .{bar years. After tliat, it ceased to be paid to her during-her life. She never claimed dower in the real estate of Tier husband, and she died in the month of February, 1804. In the month of August, 1805, Mr. Charles Irby, her and son administrator, filed a bill in the Court of Equity, against the representatives of Col. Lide, for the recovery of the arrears of annuity. But before the cause came- to a bearing, the defendants, the representatives of Col. Lide, made application to the judge of the Court of Ordinary, of the district of Marlborough, suggesting that the clause in <$¡Já will of Col. Lide, bequeathing 501. per annum to his wife, had been obtained by the undue influence, improper solicitations, and false suggestions of his said wife $ and praying that the will might be proved in solemn. form ; and that the administrator of the widow might be called upon to shew cause why the clause of the will, under which the annuity arose, should not be rejected, as having been improperly obtained. The proceedings in equity wrere thereupon suspended. The cause in the Court of Ordinary was tried in the month of October, 1807, and the judge of that court, after hearing all the testimony adduced, and reading the evidence of Morgan Brown, one of the subscribing witnesses to the will, who bad been examined under a commission issued at the instance of the representatives of Col. Lide, decided, that the clause in the will of Col. Thomas Lide, which bequeathed 501. per annum to Mrs. Mebitabel Lide, was not obtained by the undue influence, improper solicitations or false suggestions of the said Mehitabel Lide, and that the same ought to be proved in solemn form.
From this sentence an appeal was made by the representatives of Col. Lide, to the Court of Common Pleas, under the act of the legislature, which prescribes that course to be pursued by the party dissatisfied with the judgment of the Court of Ordinary. Upon this appeal an issue was made up in the district of Marlborough, on tin--sd day of November, 1807, and the cause was tried efore the circuit judge and the jury of that district. The i(ury found a verdict for the plaintiffs in appeal against the validity of the contested clause in the will.
*428 A motion, for a new trial was made by the administrator of Mrs. M.Lide ; and the judges of the Constitutional Court, upon full deliberation, ordered a new trial, on the ground, that the verdict was manifestly against evidence. Accordingly, a new trial was had in Marlborough district, and the jury found a verdict for the administrator of Mrs. Lide, which established the disputed clause of the will. This verdict was acquiesced in, no motion having been made for another trial. The representatives of Mrs. M. Lide, who had suspended the proceedings on the bill iu equity, filed for the recovery of the legacy, pending the proceedings in the Courts of Ordinary and of Common Pleas, then urged their demand. The Circuit Court of Equity sitting at Cheraws, on motion of the solicitor, ordered a reference to the commissioner, to ascertain what was due on the legacy. That officer reported to the court, that the administrator with the will annexed of Col. Lide, hat! made several payments in part of the annuity, which he credited, and that there remained a balance due, including interest, of $5,089, which was payable by the defendants, the children of Col. Lide, io whom the administrator had paid over the funds of the estate, and who were in possession of the real estates on which the annuity was chargeable, and had received the rents and profits thereof.
To this report no exceptions were filed, and the presiding judge, on motion of the solicitor, confirmed tiie report. No appeal was made from this decision, and the cause was at an end according to the legal ami established forms of proceeding in tiie Com t of Equity.
The representatives of Col. Lide, afterwards, to wit, on the rl6i.li October, 1813, filed a bill of review in Clieraw district, in order to obtain a review of the decree made by the. Circuit judge in Equity; and to reverse the same on various grounds stated in the bill of review.
The circuit judge, before whom the bill of review was brought, upen full argument, decided, as above stated, that the parties not shewing any error of law apparent on the face of the decree, nor pretending to have, discovered any new testimony, which would materially alter *429 or change the decree, the application for a re-hearing should be rejected.
From that decree an appeal was made, upon which thi3 court is now called upon to decide.
The points made by the bill of review, and on the argument, may be classed under two distinct heads :
First, — That the sentence of the Court of Ordinary, in favor of the disputed clause in Col. Lide’s will, and the judgment of the Constitutional Court, and the verdict of the jury confirming that sentence, were erroneous, and ought to have been so pronounced by the circuit judge in equity, before whom the. legacy was recovered under that clause; and that this court is now bound to declare those judgments and decrees erroneous, and to correct them.
Second, — That the decree of the circuit judge was erroneous in several other respects; hut more especially in not giving the children and representatives of Col. Lide, the benefit of the declarations of Mrs. M. Lide, the widow, which (it is allcdged) amounted to a declaration, that she had no rights under the will of Col. Lide; or that she renounced them. Also, in not allowing the parties defendant in equity, the benefit of the statute of limitations ; and also in allowing interest on the arrears of annuity.
In the argument on the first head of error, there was (as was properly observed by the circuit judge, before whom the bill of review was brought,) no allegation of any new discovered matter which could vary the case which had been made before the Court of Ordinary, and the Constitutional Court, and decided by them successively. The case made, and the evidence offered to the Circuit Court of Equity, on the bill of review, and now to this court, is precisely what was offered to those courts. We think therefore that the circuit judge in equity acted rightly in considering the judgment of those courts conclusive. It was res adjudícala, by the proper and competent tribunals, to which the representatives of Coi. Lide themselves resorted; for they were the persons who sought the judgment of those courts,, and for a number of *430 years acquiesced therein. It appears to us, that any in-terierence. on the part of the Court of Equity, to defeat or control the sentences and judgments of those courts, without any pretence of new evidence, or new matter es-sentialiy varying the case, would be very mischievous. There, would be no end of litigation. Besides, this would be to erect the Court of Equity into a direct court of appeals from the decisions of the Courts of Ordinary and of law, which it neither was in its original constitution, or has been made by statute. It is true, that where from various causes, from accidents, from the loss of papers, from ignorance of testimony, afterwards discovered, from the narrow forms of proceeding in those courts, the whole justice of the case has not been examined and decided upon, that the Court of Equity interposes to prevent injustice. Not indeed as a Court of Appeals, but as a high tribunal, whose essence is justice, which it never suffers tobe defeated by forms. But it must appear, before the Court of Equity can he drawn out to act and interpose its high powers, that the party applying has justice in his cause, of which he could not avail himself in the courts below; or where those courts were prevented by circumstances from reading that justice; where the merits had not been examined maturely, and with full lights. Ill such cases, it interferes to cause justice to be done. Such was the case- of Kennel and Abbott, reported in 4 Vez. jr.p. 802, whore the Court of Chancery refused to set up a legacy which was given by a lady (under a marriage settlement) to the person to whom she had been married, hut who was a married man when he imposed himself on this lady as a single man. The lady made her will and died in ignorance of the deception and fraud which had been practised on her. This decision was founded on the civil law, with which Swinburne agre.es. But it required no authorities, no precedents to guide the court directly to the justice of the case. And if the question had been made before the Court of Ordinary, the derision would doubtless have, been the same, according to the eternal principles of justice. But it had not *431 Seen made there. Probably the discovery of the imposition had not been made when the will was proved.
In the case before this court, the objections to the disputed clause in Col. Lide’s-will were known, and were discussed, and fully decided upon by the Court of Ordinary, and subsequently by the Constitutional- Court, and the verdict of a jury. We must presume that justice was done by those tribunals, exercising their proper jurisdiction. The judge of the Circuit Court of Equity, therefore did right in decreeing the payment of the legacy, even if the objections to the bequest had been brought to his view. And the judge before whom the bill of review was brought, was right in refusing to allow it, upon this first ground, even if bills of review are at all admissible tinder our present equity system.
We come now to the second head insisted upon for the allowance of the bill of review, to wit, that the circuit judge in equity, who decreed the payment of the legacy, ought to have allowed the representatives the benefit of the declarations of Mrs. M. Lide, stated in the evidence of Morgan Brown, which declarations it is insisted admitted that she had no right to the legacy ; or if she had any right, she had renounced it. Also, that they should have been allowed the benefit of the plea of the statute of limitations. And that at all events, no interest should have been allowed on the arrears of annuity. It seems that none of these points were insisted upon before the circuit judge in equity, who decreed the payment of the legacy. But if they had been, they were not tenable. The declarations imputed to Mrs. M. Lide, in the evidence of Morgan Brown, formed part of the case which was before the Court of Ordinary, and before the Court of Common Pleas, and the jury, and was decided by them. But if we suppose this anew, distinct and substantive ground of defence, proper for the decision of the Circuit Court of Equity, we do not think these declarations amounted to an admission by Mrs. Lide, that site had no right to the legacy, or had renounced that right. The court would require the most explicit, clear and unequivocal declarations oí a legatee, most distinctly prov *432 ed, before they would consent to strip the heirs of the legatee of the benefit of a legacy. But we do not think the declarations imputed to Mrs. M. Lide, amount to a clear unequivocal denial or renunciation of her right to the legacy. The proof too of these declarations, is of the most dangerous kind to he relied on, to shake legal rights. It is founded on the recollection of a witness, at the end of nearly twenty years $ and we well know that a slight variation in the expressions, might materially vary the sense. No imputation is intended to be thrown on the veracity of the witness ; but we. think the recollections of conversations, afler such a lapse of time, and after tho death of one of the. parses, is too uncertain to be relied upon implicitly, to destroy the rights of legatees; more espe-peciaHy when the actual receipt of four years arrears of of the. annuity, by Mrs. Lido, seems to be inconsistent with the idea of disavowing or renouncing her right to the legacy. We notice further, not to discredit the witness, but to shew the caution which courts of justice should exercise with respect to recollections, even of correct men, of such distant transactions. Mr. Brown states in his testimony, that the legacy of 501. per annum was not given to Mrs. M. Lide, in lieu of dower on Col. Tide’s estate, and gives a reason for his belief. — .Yet on the face of CoS. Lide’s will, drawn up by Mr. Brown, we find that this legacy was expressly given to Mrs, M. Lide, 46 in lieu of her part or portion of his estate.” Disavowals or renunciations of right cannot be supported on such proofs.
With respect to the statute of limitations, it is the settled doctrine of this court, that legacies cannot be barred by the statute oflimitations ; and the. heirs being put in possession of the estate, charged with the legacy, .does not emancipate the estate from its liability. We do not mean to say that no length of time, with other circumstances, might not amount to a bar. But there is no such lapse of time in this case, nor such circumstances, as ought to produce a bar.
With respect to the allowance of interest on the annuity, that was in the legal discretion of the court,' and wc do not perceive that there was any error, under the *433 .«^rcumstancos of the case in the exercise of that discretion. The annuity was given by the testator to his wife, in lieu of her part or portion of his estate,” and it was therefore her bread 5' and the interest was properly allowed on the ai-rears of annuity.
Upon this second head then, we do not perceive there was any ground to allow a bill of review. There is no error on the face of the decree, and no new matter discovered to make a new case. It should be remarked also, that after so much delay, expence and litigation through so many courts, a very strong case ought to be made to induce the court to open the door to further litigation. There ought to be strong ground to believe that substantial justice has not been done between the parties.
Again, it is to be remarked, that the parties now applying for the bill of review, have at various stages of the cause, neglected or abandoned,; the regular course prescribed or allowed by law, for the prosecution of their rights. They neglected to move for another trial, after the second verdict, differing from the first. — And they neglected appealing from the decree of the Circuit Court which directed the payment of the legacy with interest.— And though laches will not always destroy rights, it weakens the claim to indulgence.
Upon the whole, we are satisfied that the circuit judge, who refused to allow the bill of reyiew, decided correctly.
It is therefore ordered and adjudged, that the decree of the Circuit Court be affirmed, and the appeal dismissed. - .
ÍÍENBY W. BESATTSSUBjgk
Theobobe Gaiulaks*
Thomas Wadies.
W. Thompson.